UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

MELINDA MALDONADO ROMAN,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; CARMEN TOLEDO, former Principal of P.S. 25X; DIONNE BELDERES, Assistant Principal of P.S. 25X; and RAQUEL PEVEY Principal of P.S. 25X,

Defendants.

1:21-CV-06162-LTS

MEMORANDUM OPINION AND ORDER

Melinda Maldonado Roman ("Plaintiff") brings this action against the New York City Department of Education (the "DOE"), Carmen Toledo ("Toledo" or "Principal Toledo"), Dionne Belderes ("Belderes" or "Assistant Principal Belderes"), and Raquel Pevey ("Pevey" or "Principal Pevey," and together, "Defendants"), asserting claims predicated on alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12112 et seq. (Westlaw through 119-111), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 et seq. (Docket entry no. 21 (the "Second Amended Complaint" or "SAC").) The Court has subject matter jurisdiction of Plaintiff's claims under 28 U.S.C. sections 1331 and 1367.

The case is before the Court on Defendants' Motion for summary judgment with respect to all of Plaintiff's claims (docket entry no. 81 (the "Motion")). The Court has fully considered the parties' submissions in connection with the instant motion. For the following reasons, Defendants' Motion is granted in part and denied in part.

## I. BACKGROUND

The following facts are undisputed unless otherwise indicated.[1]

### A. Plaintiff's Employment at P.S. 25X

Plaintiff is an elementary school teacher who has been employed by DOE since 1998 and worked at P.S. 25X (the "School"), a bilingual public school in the Bronx. (Pl. 56.1 Resp. ¶¶ 1, 94.) Plaintiff suffers from "hip dysplasia," a condition that affects Plaintiff's hip joint and limits her mobility. (Id. ¶ 6-11.) Plaintiff has proffered medical documentation indicating that she also has a spinal disk condition that further impairs her mobility. According to letters from Plaintiff's doctors, the conditions necessitate "limited restrictions such as no more than 13 steps on 1 flight of stairs" and "no more than 15 stairs at one time indefinitely," and preclude her from performing "any high impact activities." (Id. ¶ 13.) Based on her medical evaluations, the DOE has granted Plaintiff's applications for multiple accommodations each year since 2017. (Id. ¶ 7.) Her accommodations have included a first-floor classroom, a co-teacher, "extensive technology" that minimizes Plaintiff's need to circulate around the classroom, and having Plaintiff's students escorted to and from Plaintiff's classroom. (Id.)

The P.S. 25X building does not have an elevator, so one must use the stairs to reach the upper floors. (Id. ¶ 99.) There are twenty-seven stairs between the first floor and the second floor: five stairs, a landing, a flight of eleven stairs, a landing, and another flight of

[1] Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements (docket entry nos. 82 ("Defs. 56.1 St."), 87 ("Pl. 56.1 Resp."), 89 ("Reply")) incorporate by reference the parties' citations to the underlying evidentiary submissions.

eleven stairs.[2] (Id.) Defendants contend that there is an issue of fact as to whether Plaintiff is physically capable of walking up to the School's second and higher floors, given the presence of landings between the longer series of stairs. (Docket entry no. 84 ("Def. Mem.") at 18; see docket entry no. 68-5 ("Pevey Dep.") 59:25-62:10.)

B. 2019-2020 School Year: Transfer to P.S.1 and Lawsuit Against Toledo

In June or July of 2019, Plaintiff requested and was granted a one-year transfer to P.S. 1, another public school in the Bronx. (Defs. 56.1 St. ¶¶ 2, 15; Pl. 56.1 Resp. ¶ 2.) On November 21, 2019, Plaintiff slipped and fell in her classroom at P.S. 1. (See Pl. 56.1 Resp. ¶¶ 16-24.) Plaintiff thereafter applied for a Line of Duty Injury ("LODI") leave, which was ultimately granted for the period from November 20, 2019, to May 26, 2020. (Id. ¶ 24.) The LODI leave was not approved until June 2020, however, and Plaintiff proffers that she "suffered financial hardship" during the months when she was not paid. (Id. ¶ 25.) The parties disagree as to who was responsible for the delay: Defendants argue that Plaintiff was at fault because she voluntarily rescinded her LODI leave application four times between January 2020 and March 2020, before HR rejected her application for failing to submit all the required documents in May 2020. (Defs. 56.1 St. ¶¶ 19, 21-22.) Plaintiff proffers that she was unable to submit the documents properly and was instructed to withdraw and resubmit the application multiple times because Principal Toledo refused or failed to sign them, and the system would automatically close her case while she waited for Toledo's signature. (Pl. 56.1 Resp. ¶¶ 17, 19; see docket entry no. 73-7). The parties disagree as to whether Toledo, the P.S. 25X Principal, was

---

[2] Plaintiff states that there are twenty-eight stairs between the first floor and the second floor. (Pl. 56.1 Resp. ¶ 99.) However, the number of stairs identified in the submissions adds up to twenty-seven, not twenty-eight. The discrepancy is not material to the Court's analysis.

responsible for providing the signatures or whether the P.S. 1 Principal bore that responsibility. Defendants assert that, because the injury occurred at P.S. 1, the P.S. 1 Principal was responsible for signing off on Plaintiff's LODI leave application, not Toledo. (Defs. 56.1 St. ¶ 18.) Plaintiff contends, however, that she remained on P.S. 25X payroll throughout her appointment at P.S. 1 and that P.S. 25X submitted an incident report about her slip-and-fall injury at P.S. 1, so Toledo's signatures were required for her LODI leave documents. (Pl. 56.1 Resp. ¶¶ 18, 107.) Defendants dispute this assertion as well, arguing that Plaintiff was not on the P.S. 25X payroll that year because the P.S. 1 Principal eventually signed the incident report submitted by P.S. 25X. (Reply. ¶ 109.) It is undisputed that Plaintiff's LODI leave was finally approved on June 5, 2020. (Pl. 56.1 St. ¶ 111.) On July 14, 2020, Plaintiff filed charges with the New York State Division of Human Rights ("SDHR"), asserting claims of discrimination and retaliation based on Toledo's delay in signing her LODI leave application documents, among other things (the "SDHR Charge").

A few months before she transferred to P.S. 1, Plaintiff filed a New York State Division of Human Rights ("SDHR") complaint and a federal complaint commencing a civil action against Toledo and the DOE, asserting claims of disability discrimination and retaliation. (See id. ¶ 102.) The parties reached a settlement of that federal lawsuit (which is distinct from the instant case) in December 2019.[3] (Id.) Plaintiff claims that Toledo's 2020 delay in approving the LODI leave was in retaliation for Plaintiff's 2019 SDHR complaint and federal lawsuit.

[3] Defendants object to the admission of factual allegations about the settlement as running "afoul of" Rule 408 of the Federal Rules of Evidence. (Reply ¶ 104.) Rule 408(b) permits the Court to admit evidence of a settlement for a "purpose other than to prove or disprove the validity of the claims that the offers were meant to settle." Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989); Fed. R. Evid. 408(b). It is well-settled in the Second Circuit that a plaintiff may proffer evidence of a previous settlement to support a retaliation claim premised on new factual allegations

C. 2020-2021 School Year: Return to P.S. 25X

Plaintiff returned to P.S. 25X for the 2020-2021 school year. (Defs. 56.1 St. ¶ 32.) Before the 2020-2021 school year began, Toledo assigned Plaintiff to a classroom on the second floor (Pl. 56.1 St. ¶ 114), but that assignment "ultimately became moot" because Plaintiff applied for and received a remote teaching accommodation due to the COVID-19 pandemic on August 12, 2020 (id. ¶ 39). During that school year, Toledo retired and the composition of the School's administration team changed. (Id. ¶ 40.) Defendant Belderes started working at the School as an Assistant Principal at the beginning of the fall semester. (Docket no. 68-4 ("Belderes Dep.") 9:10-13.) Defendant Pevey began shadowing Toledo in October 2020. (Pevey Dep. 14:15-21.) On December 1, 2020, Toledo officially retired, and Pevey became the Principal of the School. (Docket entry no. 68-9 ("Toledo Dep.") 10:4-9; Pevey Dep. 15:3-6.)

D. 2021-2022 School Year

On June 15, 2021, Plaintiff received an organization sheet for the upcoming school year, which assigned her to a third-floor classroom. (Pl. 56.1 Resp. ¶ 45.) Plaintiff emailed Principal Pevey to inform her about Plaintiff's disability accommodation, history, and needs; Pevey responded that she would "be sure to make . . . the necessary accommodations" for Plaintiff. (Docket entry no. 73-15.) When the school year started, however, Pevey assigned Plaintiff to a second-floor classroom, which did not comply with Plaintiff's accommodation request for a first-floor classroom. (Pl. 56.1 Resp. ¶ 45.) Plaintiff testified that she remained on

---

independent of a previous litigation. John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 628 (S.D.N.Y. 2018); Calise v. Casa Redimix Concrete Corp., No. 20-CV-7164-PAE, 2022 WL 355665, at *4 (S.D.N.Y. Feb. 4, 2022). Thus, the Court will consider the settlement of Plaintiff's previous lawsuit as evidence supporting her retaliation claims.

the first floor the entire first day of school and only received a first-floor classroom by the end of that day. (Docket entry no. 68-2 ("Pl. Dep.") 64:14-24; see also Pl. 56.1 Resp. ¶ 45.)

Plaintiff further proffers that, throughout the school year, she was excluded from trainings and events held on the upper floors of the school building because of Defendants' failure to accommodate her disability. On the first day of school, she was unable to attend professional development sessions ("PDs") and a mandatory safety training session that were held on the third floor. (Pl. 56.1 Resp. ¶ 132-33; docket entry nos. 73-18, 73-20; Belderes Dep. 124:5-8.) On November 18, 2021, Plaintiff was excluded from a classroom intervisitation opportunity for first-grade teachers because she was unable to climb to the second floor, where the other first-grade classrooms were located. (Pl. 56.1 Resp. ¶ 62.) The School administration did not inform Plaintiff about the content of the intervisitation or make accommodations enabling her to participate. (Id. ¶ 146.) Finally, Plaintiff testified that she was excluded from two teaching demonstrations that were conducted in second-floor classrooms on October 22, 2021, and November 1, 2021, although she was able to attend several related preparatory and review sessions that were held in a first-floor office. (Id. ¶¶ 143-44.) Defendants state that at least some of the teaching demonstrations were videotaped (Defs. 56.1 St. ¶ 55), but Plaintiff testified that she was never notified about the videos' existence and that the videos are either unplayable or have not been produced as evidence (Pl. 56.1 St. ¶¶ 55, 142).

Upon receiving a negative observation report on November 24, 2021, which Plaintiff characterizes as pointing out that she had not participated in the aforementioned teaching demonstrations,[4] Plaintiff filed an Office of Equal Opportunities Complaint

[4] Contrary to Plaintiff's characterization, the evaluation appears to refer to sessions at which she was physically present rather than those she was unable to attend because they

("November OEO Complaint") and an Annual Professional Performance Review ("APPR") grievance, alleging disability discrimination and retaliation. (Pl. 56.1 St. ¶ 155.) The parties do not dispute that one subsequent teaching demonstration was held in Plaintiff's classroom, on December 15, 2021, after she responded to an email that asked teachers to volunteer their classrooms. (Defs. 56.1 St. ¶ 58; Pl. 56.1 Resp. ¶ 163.) Plaintiff states that, before the December 15 presentation, Belderes notified Plaintiff's co-teacher, Ms. Williams, in a "condescending tone" in front of other teachers that "[her] classroom is chosen because [Plaintiff] cannot climb the stairs." (Pl. 56.1 Resp. ¶ 161.) Plaintiff filed an Office of Equal Opportunities Complaint about Belderes' alleged comment shortly thereafter. Belderes denies that she ever made such comment to Ms. Williams. (Belderes Dep. 134:10-135:8.)

Plaintiff also asserts that she was subjected to retaliatory disciplinary actions after she filed the November OEO Complaint. On December 7, 2021, a day when Assistant Principal Belderes was in charge of the School, Plaintiff sent two emails to the School's administrators because specialty teachers wanted to teach in Plaintiff's classroom during periods when Plaintiff was scheduled for preparation breaks. (Pl. 56.1 Resp. ¶ 78.) Later that morning, a School staff member removed iPads from Plaintiff's classroom. (Id. ¶ 74.) Plaintiff sent another email to School administration to report the iPad incident. (Docket entry no. 73-41, at 2.) About twenty minutes later, Principal Pevey replied to Plaintiff's email, stating that Plaintiff was "emailing . . . during instruction time, [which] is inappropriate and impedes on the instruction and learning of our students." (Id. at 1.) That evening, Plaintiff filed an OEO Complaint, asserting that the removal of the iPads was inconsistent with her extensive technology accommodation. (Docket

---

were held on the second floor. The evaluation noted, among other things, her "tardiness" "limited contributions" to sessions she attended. (Pl. 56.1 Resp. ¶ 150.)

entry no. 73-42.) The iPads were returned to Plaintiff's classroom the following morning before class; Principal Pevey explained in her deposition that the removal was prompted by a need to update or inventory them. (Defs. 56.1 St. ¶ 76; Pl. 56.1 Resp. ¶ 76.) Plaintiff received a disciplinary hearing notification on December 7 and a disciplinary letter on December 14 for sending emails during instructional time. (Defs. 56.1 St. ¶ 77; Pl. 56.1 Resp. ¶ 159.) She asserts that the disciplinary actions were a retaliatory reaction to her prior filings of multiple OEO complaints against Pevey and Belderes. (See Pl. 56.1 Resp. ¶ 77.) Plaintiff thereafter filed an APPR Complaint and additional OEO Complaints. (See docket entry no. 73-21).

During the 2021-2022 school year, Plaintiff was subject to three teaching observations and subsequent evaluations. After observing Plaintiff on November 24, 2021, Pevey gave Plaintiff a "poorly rated" observation evaluation, noting that Plaintiff "attempted, with uneven results, to monitor student behavior and respond to student misbehavior." (Pl. 56.1 Resp. ¶¶ 69-70, 149.) Pevey observed Plaintiff the second time on January 13, 2022. (Id. ¶ 164.) On May 24, 2022, Plaintiff was again observed by Belderes (the "May 2022 Observation").[5] (Id. ¶¶ 81, 88.) While Plaintiff and her co-teacher each took care of a group of students, Belderes allegedly interviewed students in the co-teacher's group and "changed their responses" as she

[5] In their reply to Plaintiff's memorandum and 56.1 statement, Defendants object to the admission of evidence regarding the January 13, 2022 observation because these allegations fall "outside of the scope of the operative Complaint" and were "never previously raised in litigation." (Reply ¶¶ 167-68.) The Second Circuit has held that a court may decline to consider arguments a plaintiff raised for the first time in opposition to summary judgment. Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010). The Court declines to consider the January 13, 2022 observation except as it pertains to arguments, explained below, that Plaintiff received three yearly evaluations instead of two. Notably, the May 24, 2022 observation also is outside the scope of the Second Amended Complaint, but because Defendants engage with the substance of Plaintiff's arguments regarding that observation (see Reply ¶¶ 169-170), the Court will consider evidence related to it.

took notes (id. ¶ 88), which convinced Plaintiff that Belderes was engaged in a scheme to leave her a negative evaluation. Plaintiff instructed her students to go onto their iPads for the rest of the class while she picked up an iPad to film Belderes. (Defs. 56.1 St. ¶ 84.) According to Plaintiff's co-teacher, the Plaintiff's students then went onto different platforms, and some students were playing games or engaging in activities not related to the class. (Id.) After the observation ended, Plaintiff had a panic attack in her classroom. (Pl. 56.1 Resp. ¶ 169.) An ambulance was called in, and medical professionals found that Plaintiff had slightly elevated blood pressure but no other symptoms. (Docket entry no. 73-50, at 5.) Plaintiff eventually received an observation report that rated her ineffective in every single category. (Id. at 1-3.)

On August 11, 2022, Pevey referred Plaintiff for a psychological evaluation because Plaintiff "stated she is unable to work due to stress-related illness," "suffered a panic attack on May 24, 2022," and "demonstrated erratic conduct" during the May 2022 Observation. (Docket no. 73-54, at 2.) Plaintiff was cleared by a DOE medical psychologist on September 6, 2022, and resumed teaching at P.S. 25X during the 2022-2023 school year. (Pl 56.1 Resp. ¶ 171.)

E. Procedural History

Plaintiff initiated this action pro se on July 19, 2021, after receiving a Notice of Right to Sue from the EEOC on April 20, 2021. Plaintiff amended her complaint twice, first on December 12, 2021, and again on January 5, 2022. Plaintiff retained counsel shortly thereafter. (See docket entry no. 36.) Plaintiff settled with defendant Christy Curran on August 24, 2022. (Docket entry no. 46.) The remaining Defendants thereafter moved for summary judgment on all claims. (Docket entry no. 81.)

## II. Discussion

Summary judgment is warranted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is considered material when it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" to survive summary judgment, but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted).

### A. Claims against DOE under State and City Laws

Defendants have moved to dismiss Plaintiff's claims against the DOE under the state and city human rights laws, asserting that Plaintiff failed to comply with New York Education Law Section 3813(1), which "requires plaintiff to serve a notice of claim" on the DOE within three months of the accrual of any claim and prior to initiating a lawsuit against a school, a school district, a board of education, or an education officer. (Docket entry no. 84 ("Defs. Mem.") at 24); N.Y. Educ. Law § 3813(1) (McKinney 2026). In her response, Plaintiff does not dispute that she failed to serve a timely notice of claim on the DOE. Citing decisions by district courts in the Second Circuit, Plaintiff asserts that she nonetheless satisfied the Section 3813(1) requirement by timely filing the SDHR Charge on July 14, 2020, which gave the DOE "ample notice" of Plaintiff's discrimination and retaliation claims. (Docket entry no. 88 ("Pl. Mem.") at

27-28.) In response, Defendants cite additional district court cases that found EEOC Charges or SDHR Charges insufficient to satisfy Section 3813(1)'s notice requirement. (Reply at 7.)

"When an employment discrimination action is brought against a [public entity] under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court[,]" which the Court shall only grant upon application. Mills v. Monroe County, 451 N.E.2d 456, 456 (N.Y. 1983); N.Y. Educ. Law § 3813(2). Some courts have held that this notice of claim requirement is "jurisdictional" in nature. Peek v. Williamsville Bd. of Educ., 635 N.Y.S.2d 374, 376 (N.Y. App. Div., 4th Dept. 1995); see also Berkowitz v. E. Ramapo Cent. Sch. Dist., 932 F. Supp. 2d 513, 527 n.8 (S.D.N.Y. 2013) (collecting cases).

Plaintiff does not argue that her claims fall under the public interest exception, nor has she applied for leave to serve late notice. Additionally, Plaintiff has not cited any state court decision that recognizes the sufficiency of an SDHR Charge for compliance with Section 3813(1), nor is the Court aware of any state authorities that relax the notice of claim requirement.[6] See Banigo v. Bd. of Educ. of Roosevelt Union Free Sch. Dist., 962 N.Y.S.2d 896,

---

6 District courts in the Second Circuit disagree as to whether an EEOC Charge or an SDHR Charge could satisfy the Section 3813(1) notice requirement. Compare Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist., No. 14-CV-6416-CS, 2017 WL 2374363, at *8 (S.D.N.Y. May 31, 2017) (finding the requirement met by "any document sufficiently formal and detailed for the District to investigate" because the "plain language of Section 3813(1)" does not "require a formal notice of claim"), aff'd, 750 F. App'x 41 (2d Cir. 2018), and Walsh v. Scarsdale Union Free Sch. Dist., 375 F. Supp. 3d 467, 481 (S.D.N.Y. 2019) (concluding that a timely EEOC Charge and letters to the school district were sufficient alternatives to comply with the Section 3813(1) notice requirement), with Elgalad v. N.Y.C. Dep't of Educ., No. 17-CV-4849-VSB, 2018 WL 4572237, at *5 (S.D.N.Y. Sept. 24, 2018) (previously filed SDHR Charge and OEO Complaints do not satisfy the Section 3813(1) notice requirement). Although some federal courts have followed Berrie's liberal construction of Section 3813(1), this

901 (Sup. Ct., Nassau Cnty. 2013) ("[A] plaintiff must plead and prove compliance with section 3813(1), which is a condition precedent to commencement of the action."). Whether the DOE had notice of Plaintiff's discrimination and retaliation claims is irrelevant to whether Plaintiff satisfied the statutory notice requirement. See Parochial Bus Sys., 458 N.E.2d at 1245 ("[S]tatutory requirements mandating notification to the proper public body or official must be fulfilled . . . . [and] permit[] no exception regardless of whether the [DOE] had actual knowledge of the claim . . . ."). Because Plaintiff failed to file a timely notice of claim against the DOE pursuant to Section 3813(1), and because Plaintiff has not applied to extend the time for serving notice, the Court dismisses her NYSHRL and NYCHRL claims against the DOE without prejudice.

B. Individual Liability under the ADA

Plaintiff concedes that individuals cannot be held liable under the ADA. (Pl. Mem. at 26); see Iwelu v. N.Y. State Off. of Mental Health, No. 22-3096-CV, 2024 WL 2175938, at *2 n.5 (2d Cir. May 15, 2024). The Court therefore grants Defendants' Motion to the extent that Plaintiff attempts to assert ADA claims against individual defendants Toledo, Belderes, and Pevey.

---

interpretation is inconsistent with previous decisions by the New York Appellate Division and the Court of Appeals, which have required litigants to meet their burden of serving timely notice on the defendant before their case can move forward in court. See, e.g., Banigo v. Bd. of Educ. of Roosevelt Union Free Sch. Dist., 962 N.Y.S.2d 896, 901 (Sup. Ct., Nassau Cnty. 2013) ("A plaintiff must plead and prove compliance with section 3813 (1), which is a condition precedent to commencement of the action."). In other words, in the context of Section 3813(1), "the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice." Jovasevic v. Mount Vernon City Sch. Dist., 127 N.Y.S.3d 872, 873 (N.Y. App. Div., 2d Dept. 2020) (citing Parochial Bus Sys., Inc. v. Board of Educ., 458 N.E.2d 1241, 1245 (N.Y. 1983)). Because Plaintiff does not contend that she served an actual notice of claim in a timely fashion, the Court concludes that Plaintiff failed to comply with Section 3813(1).

C. Failure to Accommodate Claims

The ADA requires an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). The ADA defines "reasonable accommodation" to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." Id. § 12111(9)(B).

To state a prima facie case of failure to accommodate under the ADA and the NYSHRL, Plaintiff must make a showing that satisfies four prongs: "(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [Plaintiff's] disability; (3) with reasonable accommodation, [P]laintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009) (citation modified). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate "undue hardship in the particular circumstances," US Airways, Inc. v. Barnett, 535 U.S. 391, 402 (2002), such as "significant difficulty or expense." McMillan v. City of New York, 711 F.3d 120, 128 (2d Cir. 2013) (citation modified). The cause of action under the NYCHRL has similar elements but imposes a lower burden on the plaintiff. Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 416 (S.D.N.Y. 2014).

The parties do not dispute that the DOE has affirmative obligations under the ADA, that the individual defendants have affirmative obligations under the state and city laws,

that all Defendants had notice of Plaintiff's disability, that Plaintiff has a disability cognizable under the three statutes, and that she could perform the essential functions of the job with reasonable accommodations. Rather, the parties disagree as to whether the DOE failed to make reasonable accommodations when P.S. 25X administrators held PDs on the upper floors and temporarily assigned Plaintiff to upper-floor classrooms.

The reasonableness of an employer's accommodation is a "'fact-specific' question that often must be resolved by a factfinder." Noll v. IBM, 787 F.3d 89, 94 (2d Cir. 2015). However, when an employer has already taken or offered measures to accommodate the plaintiff's disability, summary judgment for the employer is appropriate when the existing accommodation is "plainly reasonable" or when the plaintiff "fails to identify a facially reasonable accommodation" that the employer refused to provide. Gronne v. Apple Bank for Sav., 1 F. App'x 64, 67 (2d Cir. 2001).

As the movant, DOE has not carried its burden of demonstrating its entitlement to summary judgment on Plaintiff's failure to accommodate claims. First, there is a material factual dispute as to whether Plaintiff's medical conditions prevented her from reaching the upper floors of P.S. 25X, which calls into question whether Defendants' failure to make first-floor classroom assignments in the first instance, and to make all PD activities accessible on or from the first floor, violated their obligation to provide reasonable accommodations. (Pl. Mem. at 7-10.) A reasonable jury could find, based on the doctors' notes Plaintiff submitted, that Plaintiff can never climb more than thirteen or fifteen stairs in traversing a given distance regardless of the presence of intermittent landings; such a disability would necessitate accommodations to participate in upper-floor activities. Thus, Defendants have not produced sufficient evidence to demonstrate that Plaintiff's existing accommodations are plainly reasonable as a matter of law.

Moreover, regarding the accommodations the DOE has granted, a reasonable jury could also find that Defendants have, in effect, refused to accommodate Plaintiff's disability by repeatedly giving her work assignments inconsistent with her prior accommodations. Plaintiff testified that both Principals—Toledo and Pevey—assigned her to upper-floor classrooms despite their knowledge of her prior first-floor classroom accommodations. In an analogous case, a court in this District concluded that an employer had refused to make reasonable accommodations when it repeatedly denied an approved accommodation to a disabled employee but re-granted the accommodation after the employee objected. See Campbell v. IPsoft Inc., No. 18-CV-10684-DF, 2021 WL 4248861, at *26 (S.D.N.Y. Sept. 17, 2021). An employer's "inconsistent" efforts to provide reasonable accommodations can amount to a refusal to provide reasonable accommodations under the ADA. Id. Here, Plaintiff was repeatedly assigned to upper-floor classrooms but received new classroom assignments once she objected to the assignments. Plaintiff has produced enough evidence to enable a reasonable jury to conclude that Defendants' inconsistent efforts similarly amount to a refusal to make reasonable accommodations.

Lastly, Defendants have not shown that the accommodation Plaintiff identified in connection with upper-floor activities—holding them on the first floor—would be facially unreasonable. Defendants make conclusory assertions that Plaintiff's failure to accommodate claims are not supported by the record (Reply at 2-4), but it is not obvious why the fact that Plaintiff was the only first-grade teacher on the first floor would somehow preclude P.S. 25X from holding the PDs on the first floor.

Because Plaintiff has proffered sufficient evidence to frame a prima facie failure to accommodate claim under the ADA, the Court considers whether Defendants have proffered

evidence sufficient to establish their entitlement to judgment based on the undue hardship affirmative defense. They have not. Defendants have not shown that holding all PDs on the first floor is "an action requiring significant difficulty or expense" and would thus constitute an undue hardship. 42 U.S.C. § 12111(10)(A). Accordingly, the Court denies Defendants' Motion with respect to Plaintiff's reasonable accommodation claims under the ADA against the DOE and under the NYSHRL against the individual defendants. Because Plaintiff's burden is lower under the NYCHRL than under the ADA, the Court also denies the motion with respect to Plaintiff's failure to accommodate claim under the NYCHRL.

D. Hostile Work Environment

Hostile work environment claims are cognizable under the ADA and are evaluated under the same standard as such claims under Title VII. Fox v. Costco Wholesale Corp., 918 F.3d 65, 69 (2d Cir. 2019); Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008). A prima facie hostile work environment claim under federal law has four elements: that the plaintiff "(1) is a member of a protected class; (2) that she suffered unwelcome harassment; (3) that she was harassed because of her membership in a protected class; and (4) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." Monterroso, 591 F. Supp. 2d at 584. Under the state and city laws, a plaintiff show only they were treated "'less well' . . . because of a discriminatory intent," such that "the unequal treatment was based, at least in part, on a protected characteristic." Lee v. Riverbay Corp., Residential Mgmt. Grp., LLC, No. 22-CV-7504-LTS, 2024 WL 4312166, at *5 (S.D.N.Y. Sept. 27, 2024) (citation modified).

1. Hostile Work Environment Claim under the ADA

Defendants argue that they are entitled to summary judgment on Plaintiff's ADA hostile work environment claim because Plaintiff cannot establish that she experienced sufficiently severe or pervasive disability-based hostile conduct to sustain such a claim. (Defs. Mem. at 22-25.) To establish severe or pervasive discriminatory conduct sufficient to support a federal claim, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Fox, 918 F.3d at 74 (internal quotation marks omitted). The Court evaluates the "all the circumstances," including the following factors: "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Here, as explained below, Plaintiff presents three types of evidence in support of her ADA hostile work environment claim but, even when viewed in the light most favorable to Plaintiff, they are insufficient to enable a reasonable fact finder to determine that the incidents she experienced were so "extreme" as to amount to a change in the terms and conditions of her employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

First, the various negative observation reports and the disciplinary actions are insufficient to sustain Plaintiff's hostile work environment claims because the undisputed factual record reveals that the reprimands and disciplinary actions had legitimate bases. "Legitimate reprimands by an employer are not an abuse," and disciplinary actions taken against a plaintiff in response to legitimate reprimands do not constitute evidence supporting a hostile work environment claim. Fox, 918 F.3d at 75; see also St. Louis v. N.Y.C. Health & Hosp. Corp., 682 F. Supp. 2d 216, 234 (E.D.N.Y. 2010). Moreover, a plaintiff's unsubstantiated, subjective

disagreement with the accuracy of an evaluation, without more, is insufficient to demonstrate discriminatory animus. Francis v. Hartford Bd. of Educ., 760 F. App'x 34, 37 (2d Cir. 2019) (holding that a plaintiff must show evidence "beyond speculation that the negative evaluations were unsupported"). Because all of the reprimands and disciplinary events are supported by a record of rule violations or poor teaching outcomes (see Def. Mem. at 14-15), and because Plaintiff's arguments that these events were hostility-based are speculative, they do not support her hostile work environment claims.

Next, the multiple incidents of failure to accommodate, or difficulties in obtaining timely provision or confirmation of accommodations, are also insufficient to demonstrate the existence of a severely or pervasively hostile work environment. Here, Plaintiff proffers that she often had to make repeated requests or file complaints and that she was denied access to certain aspects of the professional development program. This evidence, however, is insufficient to allow a reasonable fact finder to conclude that she experienced extreme conduct that effectively changed the terms and conditions of her employment. In an analogous case, the D.C. Circuit held that incidents of failing to accommodate cannot automatically establish a hostile work environment claim unless a plaintiff demonstrates that the lack of accommodations created an "extreme" work condition. Hill v. Assocs. for Renewal in Educ., Inc., 897 F.3d 232, 237 (D.C. Cir. 2018) (concluding that repeated denial of the plaintiff's requests to teach in a lower-floor classroom and receive a classroom aide were not "'extreme' conditions" that amounted to hostility). Here, although the School repeatedly failed to accommodate her mobility disability in a reliable way, Plaintiff was never forced by a supervisor to work in any "extreme" conditions, and most of the issues were addressed relatively quickly once Plaintiff put the administration on

notice. Evidence of minor, temporary inconveniences is not sufficient to support a hostile work environment claim.

Lastly, without a pattern of derogatory remarks, the one-line comment Belderes allegedly made in front of other teachers ("[Plaintiff's] classroom is chosen because [Plaintiff] cannot climb the stairs" (Pl. 56.1 Resp. ¶ 161)) was not so extraordinarily severe as to allow a reasonable fact finder to conclude that the work environment was hostile and abusive. This comment was not derogatory or disparaging about Plaintiff's disability and did not alter the terms or conditions of her employment. Cf. Fox, 918 F.3d at 75-76 ("[T]easing in the workplace is not uncommon, and in most instances probably not actionable.").

In sum, a reasonable jury could not find that, even taken together, Plaintiff's evidence of (1) legitimate reprimands and disciplinary actions, (2) repeated accommodation requests that were quickly resolved and (3) one comment from a co-worker constituted sufficiently severe or pervasive discrimination to sustain an ADA hostile work environment claim. Accordingly, Plaintiff's hostile work environment claim under the ADA fails as a matter of law.

2. Hostile Work Environment Claim under State and City Law

Under the state and city human rights laws, "a plaintiff must allege . . . that the unequal treatment was based, at least in part, on a protected characteristic." Lee, 2024 WL 4312166, at *5. Plaintiff has not proffered sufficient facts to support her allegations that the conduct of which she complains was the product of disability-based animus. While, as noted above in connection with her failure to accommodate claim, she has framed fact issues as to whether defendants were sufficiently proactive and consistent in identifying and providing accommodations to meet the requirements of the law, her evidence does not support an inference

that the alleged conduct was motivated by hostility against her on the basis of her disability. For that reason, Plaintiff cannot sustain her hostile work environment claim under state and city laws.

Thus, Defendants are entitled as a matter of law to summary judgment dismissing her hostile work environment claims under the ADA and under the more lenient state and local legislation as well.

E. Retaliation Claims

To establish a prima facie retaliation claim under the ADA, a plaintiff must produce sufficient evidence to show the following elements: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999); Tafolla v. Heilig, 80 F.4th 111, 125 (2d Cir. 2023). An "adverse employment action" has been defined for purposes of a retaliation claim as "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). Ordinarily, however, "petty slights, minor annoyances, and a simple lack of good manners will not create such deterrence," Burlington, 548 U.S. at 68 (citation omitted). The standard for a retaliation claim is less demanding under the state and city laws: "[T]he plaintiff must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013) (internal citation omitted).

The Court will address each of Plaintiff's retaliation claims in turn.

1. Retaliation Claims Related to Toledo's Conduct

Plaintiff alleges that, after the December 2019 settlement of the federal lawsuit, then-Principal Toledo retaliated against her by failing or refusing to provide signatures to complete her LODI leave application, which resulted in a six-month delay of payment that caused her financial hardship. (Pl. Mem. 15-17.) Defendants argue that Plaintiff has failed to proffer facts framing a prima facie case of retaliation against Toledo because the protected activity and the adverse employment action were too far removed from each other for a reasonable fact finder to infer a causal nexus. (Defs. Mem. 20-22.) According to Defendants, because district courts in the Second Circuit typically find that "a gap longer than two months severs the inferred causal relationship," the interval between the previous settlement and the LODI leave application dispute was too long to support a prima facie case of retaliation. (Id. at 20 (quoting Santana v. Mount Vernon City Sch. Dist./Bd. of Educ., No. 20-CV-3212-NSR, 2023 WL 2876653, at *11 (S.D.N.Y. Apr. 7, 2023)).)

Defendants' argument is unavailing for two reasons. First, the Second Circuit has explicitly declined to establish a bright line rule on the temporal proximity between the protected activity and the allegedly retaliatory act, and that court has previously concluded that five months is not too long a period to support the causal nexus. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). Second, even if the Court accepts as a premise that any time period more than two months is too long to establish a causal nexus, the proximity between the settlement and the LODI application delay still passes muster. Drawing all factual inferences in the most favorable light to Plaintiff, Plaintiff's LODI leave application was only delayed because Toledo failed to timely sign the necessary documents beginning in early 2020, which

made Plaintiff rescind and resubmit her application multiple times before its final approval in June. Thus, a reasonable fact finder could conclude that the time between the December settlement and Plaintiff's LODI leave application process was close enough to supply a basis for the requisite causal nexus for her state and local law retaliation claim against Toledo. The Court therefore denies Defendants' Motion on the retaliation claim against Toledo as well as the ADA retaliation claim against DOE based on Toledo's actions.

2. Retaliation Claims Related to Belderes' Conduct

Next, Plaintiff argues that, a few weeks after she filed the November OEO Complaint against Assistant Principal Belderes and Principal Pevey, Belderes retaliated against her by directing the removal of iPads from Plaintiff's classroom, which deprived her of her extensive technology accommodations and hindered her ability to teach. (Pl. Mem. at 19-20.) Plaintiff also asserts that Belderes further retaliated against her by setting up the May 2022 Observation in order to burden Plaintiff with a negative evaluation. (Id. at 21-22.) Defendants assert that Plaintiff has failed to establish a prima facie case of retaliation because (1) Belderes and Pevey testified that they had no knowledge of the November OEO Complaint, (2) the temporary iPad removal did not constitute an adverse employment action, and (3) Plaintiff cannot point to any non-conclusory, non-speculative evidence to establish a discriminatory animus that motivated the May 2022 Observation. (Reply at 4-5.)

The Court concludes that Plaintiff has not established a prima facie retaliation claim with respect to the May 2022 Observation because she has failed to proffer sufficient evidence that supports the required causal nexus. First, Plaintiff argues that the May 2022 Observation was retaliatory because, as a tenured teacher, she only needed to be observed twice per school year. (Pl. Mem. at 21). However, Plaintiff's assertion is unsupported by other

evidence and is contradicted by (1) the DOE email that she produced, which states that tenured teachers receive two observations minimum per year (see docket entry no. 73-51), and (2) Belderes' deposition testimony that all teachers at P.S. 25X received more than two observations that year (Belderes Dep. 144:11-12). Second, Plaintiff complains that the May 2022 Observation evaluation rated her ineffective in every category, which she asserts was evidently retaliatory because it was the "first time this happened in Plaintiff's 20 plus [year] career." (Pl. Mem. at 21). However, as discussed above, a plaintiff's unsubstantiated disagreement with the fairness of an evaluation, without more, is insufficient to establish a discriminatory animus. Francis, 760 F. App'x at 37. Furthermore, Defendants have proffered legitimate, nondiscriminatory reasons for the ratings given in the May 2022 Observation, and Plaintiff has failed to proffer evidence from which a reasonable fact finder could conclude that Defendants' reasons were pretextual covers for retaliation. Notably, Plaintiff's attempt to demonstrate that the May 2022 Observation ratings were anomalous is inconsistent with the record. While even a history of positive performance evaluations is not itself sufficient to establish pretext, previous negative evaluations undermine the likelihood that a recent negative evaluation is merely pretextual. Kerman-Mastour v. Fin. Indus. Regul. Auth., 814 F. Supp. 2d 355, 373 (S.D.N.Y. 2011). Accordingly, Plaintiff has failed to produce sufficient evidence regarding the May 2022 Observation to support a viable claim of retaliation.

Plaintiff has also failed to proffer sufficient evidence to establish a prima facie case of retaliation against the DOE and Belderes on the basis of the iPad removal incident. While the Second Circuit has made clear that the denial of a reasonable accommodation may qualify as an adverse employment action to the extent that the denial alters the "terms, conditions, or privileges of employment" in a different context, see Billings v. Murphy, No. 22-

2010-CV, 2024 WL 444727, at *3 (2d Cir. Feb. 6, 2024), even viewing the evidence in the light most favorable to Plaintiff, the temporary removal of iPads did not materially change the terms and conditions of her employment or job responsibilities. Nor, applying the more lenient standard under state and city law, would such a one-time minor, temporary inconvenience be reasonably likely to deter a person from filing an OEO complaint. Accordingly, Plaintiff has not produced sufficient evidence to establish a prima facie case of retaliation against Belderes, and the Court grants Defendants' Motion to the extent it seeks the dismissal of Plaintiff's retaliation claim against Belderes as well as the ADA retaliation claim against the DOE based on Belderes' actions.

3. Retaliation Claims Related to Pevey's Conduct

Finally, Plaintiff asserts that, after she filed the OEO discrimination and retaliation complaint against Principal Pevey, Pevey retaliated by taking disciplinary actions against her and referring her for a psychological evaluation. (Pl. Mem. at 25.) Neither the disciplinary actions nor the psychological evaluation gives rise to a retaliation claim that can survive summary judgment.

First, Plaintiff fails to establish a genuine issue of material fact as to whether Defendants' justification for the disciplinary actions was a pretext, as she fails to offer evidence from which a fact finder could properly infer that Pevey acted with "discriminatory intent or bad faith." Macshane v. City of New York, No. 05-CV-06021-RRM-RML, 2015 WL 1298423, at *15 (E.D.N.Y. Mar. 23, 2015). As to the disciplinary letter and meeting, Plaintiff does not dispute that the School has a policy that forbids teachers from sending emails during instructional time; she instead argues that Defendants' sanction was too harsh in light of her long employment record and the emergent nature of the email. (Pl. Mem. at 21.) These allegations,

however, are not enough to enable a reasonable fact finder to conclude that Pevey was motivated by retaliatory intent or bad faith. That is particularly so because Pevey offered uncontradicted testimony that other teachers who broke this rule were also issued disciplinary letters (Defs. Mem. at 6), which would allow a reasonable fact finder to conclude that the School had a legitimate business reason to "enforce[] its preexisting disciplinary [rule] in a reasonable manner," Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006). In the absence of any additional evidence to contradict the explanation and show a retaliatory animus, Plaintiff has failed to demonstrate that Pevey's disciplinary letter was a pretext for a discriminatory motive.

As to the psychological evaluation, Plaintiff has failed to assert a prima facie retaliation claim with respect to Pevey's psychological evaluation referral because a referral, requested to determine "mental fitness" after an employee's "irrational behavior," is not an adverse employment action under these circumstances. See Meder v. City of New York, No. 06-CV-504-JG-VVP, 2007 WL 2937362, at *4, *6 (E.D.N.Y. Oct. 9, 2007)). Here, the referral was made after Plaintiff stopped teaching her students and instead videorecorded Belderes, who was in her classroom for an observation. (Pl. 56.1 Resp. ¶ 89.) Accordingly, Plaintiff's retaliation claim against Pevey, and against DOE for Pevey's conduct, cannot survive summary judgment.

In sum, the Court denies Defendants' Motion to the extent Plaintiff asserts an individual liability claim for retaliation against Toledo under state and city law and to the extent Plaintiff's ADA retaliation claim against DOE is premised on Toledo's conduct; the Court grants Defendants' Motion to the extent that Plaintiff asserts individual liability claims for retaliation against Belderes and Pevey under state and city law and to the extent her ADA retaliation claim against DOE is premised on Belderes' and Pevey's conduct.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. Summary judgment is denied as to Plaintiff's failure to accommodate claim, her individual retaliation claim against Toledo under state and city laws, and her ADA retaliation claim against DOE, to the extent that claim is based on Toledo's conduct; summary judgment is granted dismissing Plaintiff's hostile work environment claims, her individual retaliation claims against Principal Pevey and Belderes, and her ADA retaliation claim against DOE, to the extent that claim is based on Pevey's and Belderes' conduct. This Memorandum Opinion and Order resolves docket entry no. 81.

This case remains referred to Magistrate Judge Cave for general pretrial management and for settlement purposes. Within thirty days of the issuance of this Memorandum Opinion and Order, the parties are directed to contact Magistrate Judge Cave's Chambers to set a status conference in the near term for settlement purposes. The parties are further directed to file a joint status report by **January 8, 2027**, stating whether they expect to proceed to trial, the approximate length of time needed for the presentation of evidence, and whether both parties consent to trial before Magistrate Judge Cave.

SO ORDERED.

Dated: New York, New York
September 29, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge